KTF:RMS
F. #2022V02227

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                               Case Nos. 03-CR-929 (NGG)
                                                  05-CR-060 (NGG)

ANTHONY DONATO,
              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

The United States of America, through undersigned counsel, respectfully submits this

response in opposition to the motion for a reduction in sentence (the "Motion") filed by

Defendant Anthony Donato ("Defendant"), pursuant to 18 U.S.C. § 3582(c)(l)(A)(i).  For the

reasons stated below, this Court should deny the motion.

I.      **Background**

    **A. Offense Conduct and Convictions**

On November 18, 2004, a grand jury sitting in the Eastern District of New York returned

a superseding indictment charging Defendant, a soldier in the Bonanno crime family of La Cosa

Nostra, with racketeering conspiracy, including predicate acts of attempted murder and illegal

gambling, as well as a substantive count of illegal gambling (the "2003 case").  Case No. 03-CR-

929, ECF No. 165.  On November 8, 2005, Donato pled guilty to racketeering conspiracy,

including all the predicate acts with which he had been charged, and illegal gambling.  Case No.

03-CR-929, ECF No. 375.  The conduct to which Donato pled guilty stretched over several

decades, from approximately 1979 to 2004, and included his involvement in the attempted

murder of David Nunez.  Case No. 03-CR-929, Presentence Investigation Report ("PSR") ¶ 2.

On April 17, 2008, a grand jury sitting in the Eastern District of New York returned a

ninth superseding indictment charging Defendant with conspiracy to murder in-aid-of

racketeering, murder in-aid-of racketeering, and use of a firearm in connection with the murder

(the "2005 case").  See Case No. 05-CR-060, ECF No. 462.  The charges related to Defendant's

involvement in the murder of Frank Santoro.  On August 6, 2008, Defendant pled guilty to

conspiracy to murder in-aid-of racketeering pursuant to a plea agreement entered into under

Federal Rule of Criminal Procedure 11(c)(1)(C).  Case No. 05-CR-060, ECF No. 509.

Defendant's plea agreement specified an agreed-upon sentence of 25 years' imprisonment,

comprised of a 25-year sentence on the 2003 case, and a concurrent 10-year sentence on the

2005 case.  Case No. 05-CR-060, ECF No. 582.

### B.  Sentence

On December 6, 2008, the Court sentenced Defendant to the exact sentence stipulated by

the parties in the plea agreement:  300 months' imprisonment on the 2003 case, with the 120-

month term on the 2005 conviction to run concurrently.  Case No. 05-CR-060, ECF No. 583.

This sentence was below the applicable Guidelines range of 324 to 405 months.  PSR ¶ 7.

### C.  Requests for Compassionate Release

On May 14, 2020, Defendant filed a motion for a sentence reduction under

§ 3582(c)(1)(A)(i), arguing his vulnerability to COVID-19, the conditions at FCI Danbury, his

rehabilitation, and his "low[] risk of recidivism" constitute "extraordinary and compelling

reasons" to warrant compassionate release.  Case No. 03-CR-929, ECF No. 1229, at 3-4.  On

May 25, 2020, the United States filed a response in opposition.  Case No. 05-CR-060, ECF No.

1482.  On July 6, 2020, the Court denied this first request for compassionate release on the grounds that Defendant failed to carry his burden to show that his vulnerability to COVID-19 constituted an "extraordinary and compelling" reason and that, even if Defendant had carried his burden, sentence reduction was inappropriate based on the sentencing factors set forth in 18 U.S.C. § 3553(a).  United States v. Donato, 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020), aff'd, 848 F. App'x 485 (2d Cir. 2021).  On May 27, 2021, the Second Circuit affirmed that decision, concluding that the Court did not abuse its discretion in determining that the § 3553(a) factors weighed against sentence reduction.  United States v. Donato, 848 F. App'x 485 (2d Cir. 2021).

On July 22, 2022, Defendant, proceeding pro se, filed the Motion.  Case No. 03-CR-929, ECF No. 1236; Case No. 05-CR-060, ECF No. 1528 (hereinafter, "Mot.").  In accordance with the Court's order dated July 28, 2022, the United States submits this response.

## II.    Applicable Law

Generally, a district court "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); see also Dillon v. United States, 560 U.S. 817, 824–25 (2010).  Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)."  18 U.S.C. § 3582(c)(1).  A defendant must satisfy three requirements for the court to grant a motion for compassionate release.  See United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021).

"First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting [compassionate release] from prison authorities."  Id.  In particular, a defendant must "fully exhaust[ ] all administrative rights to appeal a failure of the

3

Bureau of Prisons to bring a motion on the defendant's behalf" or wait until 30 days after "the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Second, a court must find that "extraordinary and compelling reasons" warrant a sentence reduction "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Under the relevant Sentencing Commission policy statement, a court may reduce the term of imprisonment if "extraordinary and compelling reasons warrant the reduction," U.S.S.G. § 1B1.13(1)(A); "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," id. § 1B1.13(2); and "the reduction is consistent with this policy statement," id. § 1B1.13(3).

Third, a court must consider "'the factors set forth in [§] 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)). These factors include, among other things: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct, (3) the need for the sentence imposed to protect the public from further crimes of the defendant, and (4) the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a). Thus, the existence of "extraordinary and compelling reasons" does not necessarily compel compassionate release if the court determines that the § 3553(a) factors warrant continued imprisonment. See United States v. Gotti, 433 F. Supp. 3d 613, 615 (S.D.N.Y. 2020) (explaining that "a defendant who meets all the criteria for

compassionate release consideration . . . is not thereby automatically entitled to a sentence modification" but rather "simply *eligible* for a sentence modification" since a "court confronted with a compassionate release motion is still required to consider all the [§] 3553(a) factors to the extent they are applicable" (emphasis added)).

A "defendant bears the burden of demonstrating his eligibility for compassionate release." See United States v. Antney, 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 30, 2021) (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." United States v. Garcia, 2021 WL 1616914, at *3 (E.D.N.Y. Apr. 26, 2021) (citation omitted).

### III.   <u>Argument</u>

Defendant claims that "four extraordinary and compelling reasons" justify a sentence reduction to time served: (1) the supposedly "stark sentencing disparity with [certain] co-defendants, and with defendants in a related case, who received lesser sentences"; (2) his "family circumstances with a special-needs son"; (3) "the 'twice as punitive' harsher than usual continuing prison conditions due to the Covid-19 pandemic"; and (4) his post-conviction rehabilitation. Mot. at 2. However, these circumstances, even accepted as true and viewed in combination, do not constitute "extraordinary and compelling reasons" for purposes of § 3582.[1] In any event, the § 3553(a) factors counsel heavily against a sentence reduction.

---

[1]    Defendant appears to have exhausted his administrative remedies with the Bureau of Prisons ("BOP"), as required by § 3582. See Mot., Ex. D.

**A. Defendant has not shown "extraordinary and compelling reasons" warranting a sentence reduction.**

The Motion necessarily fails because Defendant, once again, has not met his "burden of showing that 'extraordinary and compelling reasons' to reduce his sentence exist." Gotti, 433 F. Supp. 3d at 619; cf. Butler, 970 F.2d at 1026 ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

**1. Claimed Sentencing Disparity**

Defendant claims that "some of his equally and more culpable co-defendants and defendants in a related case received lesser sentences." Mot. at 8. However, this Court is not required to consider sentencing disparities between Defendant and others. See, e.g., United States v. Roman, 2022 WL 363909, at *1 (2d Cir. Feb. 8, 2022) (affirming denial of compassionate release and explaining "there is no requirement that a district court consider or explain sentencing disparities among codefendants" (quoting United States v. Alcius, 952 F.3d 83, 89 (2d Cir. 2020))); United States v. Bryant, 976 F.3d 165, 180 (2d Cir. 2020) ("[T]here is no requirement to consider a disparity with a co-defendant's sentence." (citing Alcius, 952 F.3d at 89)); United States v. Clinton, 820 F. App'x 34, 37 (2d Cir. 2020) (reaffirming "that a district court is not required to consider . . . disparities [among co-defendants]"); United States v. Frias, 521 F.3d 229, 236 (2d Cir. 2008) (holding that district courts are not required "to consider disparities between co-defendants"). "[A]pplications for compassionate relief are not vehicles for collaterally attacking the merits of a defendant's sentence," United States v. Alvarez, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020) (citing United States v. Lisi, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020)), as such matters instead should be reviewed through "a direct appeal or a habeas petition," Lisi, 440 F. Supp. 3d at 251. "What justifies compassionate release is a finding that new mitigating 'extraordinary and compelling' circumstances exist to reduce that

6

sentence; it is not an opportunity to second guess or to reconsider whether the original sentence was just." United States v. Ebbers, 432 F. Supp. 3d 421, 429 (S.D.N.Y. 2020)) (emphasis added).

While Defendant points to several cases in support of his argument, Mot. at 7–8 (citing, inter alia, United States, v. Lugo, 2022 WL 732153, at *8 (E.D.N.Y. Mar. 11, 2022), and United States v. Haynes, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020)), he has not shown that his sentence creates unwarranted sentencing disparities in light of the intensely fact-specific rulings in those cases, cf. United States v. Brown, 2021 WL 5872940, at *2 (2d Cir. Dec. 13, 2021) ("To the extent that [a defendant] relies on district court decisions granting compassionate release to defendants he deems to be similarly situated . . . those cases are non-binding."). For example, in Lugo, the Honorable Nina Gershon noted the "stark disparity between [the defendant]'s life sentence and the 30-year sentences imposed on [his co-defendants]," 2022 WL 732153, at *8, and in Haynes, the Honorable Raymond J. Dearie discussed a sentence of more than 46 years as compared to a co-defendant's 10-year sentence, 456 F. Supp. 3d at 514. Here, in contrast, the "average" disparity cited by Defendant is only 10 years. Mot. at 8.

In any event, any disparity in sentencing can be seen as a function of, among other things, Defendant's involvement in two separate violent crimes (murder and attempted murder), which the Court took into consideration at the time of his sentencing. See Donato, 2020 WL 3642854, at *1. Moreover, Defendant fails to mention that some co-defendants received longer sentences, see, e.g., Case No. 03-CR-929, ECF No. 279 (sentencing Joseph Massino to life imprisonment); Case No. 05-CR-060, ECF No. 596 (sentencing Anthony Aiello to 30 years' imprisonment), or

acknowledge that he agreed to the below-Guidelines sentence that this Court imposed, see PSR ¶ 7; Case No. 05-CR-060, ECF No. 582.[2]

For these reasons, any supposed sentencing disparity does not constitute an "extraordinary and compelling" reason—and certainly not a "*new*" circumstance—warranting compassionate release.

### 2. Family Circumstances

The Application Note to § 1B1.13 provides two "extraordinary and compelling" reasons based on family circumstances: (i) "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and (ii) "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, app. note 1(C). While courts are able "to consider the myriad of family circumstances that might warrant granting compassionate release, § 3582(c)(1)(A)(i) still only authorizes release where the family circumstances are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated." United States v. John, 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020). "There is no question that a defendant's incarceration is painful and burdensome to family members, who must bear the stress of managing their lives without the defendant's help. It is an unfortunate fact, however, that these burdens are common to almost all families of incarcerated people, and do not constitute extraordinary or compelling factors." United States v. Vailes, 2020 WL 3960505, at *3 (E.D.N.Y. July 13, 2020); see also United States v. Mojica, 2020 WL 6746478, at *1 (S.D.N.Y. Nov. 16, 2020) (expressing sympathy with

---

[2]    Curiously, Defendant points to Aiello's sentence in support of his claim of sentencing disparities, but Aiello received a longer sentence than Defendant. See Mot. at 8 (noting that Aiello was sentenced to 30 years' imprisonment).

the defendant's family but noting "hardship on the family almost always results from serious criminal conduct, and rarely rises to the level of extraordinary and compelling").

While Defendant's conviction for decades of racketeering activity undoubtedly has negatively impacted his family, see Mot. 10–14; id., Exs. F–J, any "caregiving that [Defendant] would provide for his special-needs son" is not within the category of circumstances that constitute an "extraordinary and compelling" reason for a reduced sentence, id. at 14. Indeed, the difficulties experienced by Defendant's son as a result of his incarceration appear to be a chronic issue (as opposed to a newly emerged situation) that the family has worked to manage during the years that Defendant has been away. Although "[Defendant's] release would lighten the burden on his ex-wife," id., that Defendant is not the only possible caretaker for their adult son confirms that no "extraordinary and compelling" reason exists, see, e.g., United States v. Espinal, 2021 WL 3566579, at *3 (E.D.N.Y. Aug. 12, 2021) (finding that "the defendant's family circumstances, while very unfortunate, do not rise to the 'extraordinary and compelling' standard" because "the defendant has five other siblings, none of whom are incarcerated, who can presumably provide their mother with the care she needs in the defendant's absence"); United States v. Figueroa, 2021 WL 664004, at *3 (E.D.N.Y. Feb. 19, 2021) (finding that the defendant's desire to care for his father and brothers was not an "extraordinary and compelling" reason because there was no indication that the defendant was the only possible caretaker); Mojica, 2020 WL 6746478, at *1 (holding that the defendant's desire to help his ailing mother and autistic son did not amount to an "extraordinary and compelling" reason where others were available to care for the family members); United States v. Yoda, 2020 WL 5502325, at *3 (S.D.N.Y. Sept. 11, 2020) (finding that release was not warranted because the

9

defendant had not alleged that he was the only other possible caretaker of his ailing father and had several siblings who may have been able to help with caretaking duties).

Defendant's family circumstances, therefore, do not justify a sentencing reduction.

### 3. Prison Conditions

Defendant next argues that "[t]he pandemic has imposed serious burdens . . . including unprecedented restrictions on visitations, activities and inmate movement within the facility with no end in sight." Mot. at 16; see generally id. at 14–18. Yet in so doing, he fails to allege an "extraordinary and compelling" reason specific to him.

While "the pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure" and "do not rise to the level of extraordinary and compelling." United States v. Veliu, 2022 WL 2484240, at *5 (E.D.N.Y. July 6, 2022) (internal quotation marks omitted); see also United States v. Brooks, 2021 WL 1550268, at *1 (S.D.N.Y. Apr. 20, 2021) (recognizing that "COVID-19 has created harsh conditions of confinement for [the defendant]" but underscoring that "the same can be said for . . . all other inmates in prison facilities around the country"); United States v. Johnson, 2021 WL 1207314, at *4 (E.D.N.Y. Mar. 31, 2021) (recognizing "that BOP inmates have faced punishing conditions during lockdown" but noting that "these hardships do not set [the defendant] apart from the rest of the BOP inmate population") ; accord United States v. Waite, 2022 WL 2966505, at *3 (D. Me. July 27, 2022) (finding the defendant's claimed "inability to obtain more time credits and the unanticipated harshness of his experience" does not establish "such circumstances to be extraordinary among federal inmates amid the broad systemic disruptions caused by COVID-19"). As one district court observed, "nearly all prisoners have experienced altered conditions as a result of the Covid-19 pandemic . . . . If this circumstance qualified as 'extraordinary and

10

compelling,' nearly every prisoner in BOP custody would qualify for a sentence reduction under § 3582(c)(1)(A)." United States v. Jiggetts, 2021 WL 2042669, at *2 (M.D. Fla. May 21, 2021). Courts, therefore, routinely deny compassionate release requests based on restrictive COVID-related prison conditions. See, e.g., United States v. Davidson, 2022 WL 484829, at *3 (S.D.N.Y. Feb. 17, 2022) (denying compassionate relief where the defendant alleged, among other things, that the pandemic had resulted in "no programming at all, no access to mental health, very limited medical care, long periods without any rec and extended periods of lockdown"); United States v. Wright, 2021 WL 5109661, at *3 (W.D.N.Y. Nov. 3, 2021) (rejecting claim that COVID-19 lockdown conditions presented an "extraordinary and compelling" reason for compassionate release); United States v. Boccanfusco, 2021 WL 736420, at *3 (E.D.N.Y. Feb. 24, 2021) (concluding that "the admittedly severe restrictions and difficult conditions that exist . . . due to the pandemic" do "not constitute an extraordinary or compelling reason to grant compassionate release"); United States v. LaBarca, 2021 WL 195996, at *5 (S.D.N.Y. Jan. 20, 2021) (denying compassionate release request based on restrictive COVID-related prison conditions that are "true for all prisoners").

Accordingly, even accepting that "[t]he time [Defendant] has served in prison has been much more onerous than the Court contemplated when it sentenced him," Mot. at 18, the general prison conditions created by COVID-19 do not constitute an "extraordinary and compelling" reason justifying his requested sentence reduction.

4. Rehabilitation

Finally, Defendant points to his post-sentencing rehabilitation as grounds warranting compassionate release. See id. at 18–22. He fails to explain or indicate, however, how such efforts create an "extraordinary and compelling" reason for a reduced sentence. Cf. United

11

States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020) ("Rehabilitation . . . alone shall not be considered an extraordinary and compelling reason." (quoting 28 U.S.C. § 994(t))).

As this Court recently observed, while "good behavior and efforts at rehabilitation are commendable," "model prison conduct is expected." Veliu, 2022 WL 2484240, at *5; see also United States v. Garcia, 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022) ("Maintaining good conduct in prison is not uncommon, and indeed is expected."). Defendant's lack of disciplinary infractions and participation in programming simply do not rise to the level of "extraordinary and compelling." See, e.g., Veliu, 2022 WL 2484240, at *5 (finding that the defendant's continuous employment and completion of "234 hours of programming in five years" was "not sufficient to meet the required standard"); United States v. Gunn, 2022 WL 2077971, at *4 (S.D.N.Y. June 9, 2022) (concluding that "rehabilitation through participation in prison programs and religious organization does not constitute an 'extraordinary and compelling' justification for release"); United States v. Strong, 2021 WL 75660, at *5 (S.D.N.Y. Jan. 7, 2021) (concluding that the defendant's rehabilitation, while commendable, "is not unusual" and "does not support reducing his sentence by nearly five years").

Regardless of his laudable efforts towards rehabilitation, Defendant was sentenced for extraordinarily serious and violent conduct that, as discussed below, would in any event be "outweighed by the other [§] 3553(a) factors, which do not favor an early release." United States v. Walden, 2020 WL 7870670, at *4 (S.D.N.Y. Dec. 31, 2020); see also United States v. Garcia, 2022 WL 2154675, at *2 (2d Cir. June 15, 2022) (affirming denial of compassionate release where the district court acknowledged the defendant's commitment to rehabilitation but concluded that his criminal history and the seriousness of his crime counseled against release); United States v. Reyes, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (affirming denial of

12

compassionate release where the district "court acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the [§] 3553(a) factors weighed heavily against a sentence reduction" in light of the defendant's conduct); United States v. Williams, 2022 WL 1554649, at *2 (2d Cir. May 17, 2022) (affirming denial of compassionate release where "[t]he district court held that [the defendant] was not entitled to a sentence reduction under the § 3553(a) factors because of the seriousness of his offenses and because the danger to the community outweighed any rehabilitative attempts, given the severity of his offenses which included murder").

Moreover, where a defendant was involved in a violent crime such as murder—or, as here, murder and attempted murder—courts generally have declined to conclude that the defendant is no longer a danger to the safety of any other person or society. See, e.g., United States v. Urso, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); Gotti, 433 F. Supp. 3d at 619–20. In Urso, this Court denied a compassionate release request from another member of the Bonanno crime family because, among other things, it was "unable to conclude that [the defendant] no longer present[ed] a danger to the safety of any other person or to the community" given his "involve[ment] in organized crime for over thirty years." 2019 WL 5423431, at *3. The same is true for Defendant, as this Court has acknowledged. See Donato, 2020 WL 3642854, at *2

### B. Even if Defendant had demonstrated "extraordinary and compelling reasons," the § 3553(a) factors support continued imprisonment.

Even if Defendant could show "extraordinary and compelling" reasons justifying a sentence reduction, the Court still must consider the § 3553(a) factors, see 18 U.S.C. § 3582(c)(1)(A); see also Jones, 17 F.4th at 374 ("[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)."), which

include "the nature and circumstances of the offense and the history and characteristics of the
defendant" and the need "to protect the public from further crimes of the defendant." 18 U.S.C.
§§ 3553(a)(1) & (a)(2)(C). These factors may serve as "an alternative and independent basis for
denial of compassionate release." United States v. Robinson, 848 F. App'x 477, 478 (2d Cir.
2021); see also United States v. O'Neil, 2021 WL 1616915, at *1 (E.D.N.Y. Apr. 26, 2021)
(explaining that the § 3553(a) factors can "override, in any particular case, what would otherwise
be extraordinary and compelling circumstances").

Review of the § 3553(a) factors in the instant case "presents an insurmountable barrier to
relief." United States v. Markou, 2020 WL 6945923, at *2 (E.D.N.Y. Nov. 25, 2020). In fact,
this Court already has found that the "factors do not support [Defendant's] request [for
compassionate release]," Donato, 2020 WL 3642854, at *2, and the Second Circuit has upheld
that determination, Donato, 848 F. App'x 485. The relevant circumstances have not changed
since then: Defendant still "has a history of violence," "was a member of the violent Bonanno
organized crime family," "participated in [an] ambush murder," and "is entirely capable of
returning to organized crime activities" notwithstanding his age. Donato, 2020 WL 3642854, at
*2.

Accordingly, in light of the seriousness of his offenses, the continued need to deter others
from committing similar crimes, and the continued need to protect the public from further
crimes, a sentence reduction would "fail to achieve the important policies of the § 3553(a)
factors—namely, providing just punishment, affording adequate deterrence, and promoting
respect for the law." United States v. Tranese, 2021 WL 25371, at *2 (E.D.N.Y. Jan. 4, 2021);
see also, e.g., United States v. Gioeli, 2020 WL 2572191, at *5 (E.D.N.Y. May 21, 2020)
(concluding that the § 3553(a) factors weighed against compassionate release because a sentence

reduction would "diminish[] his transgressions and undermin[e] the goals of the original sentence" where the defendant participated in a "vicious and violent organized crime syndicate").

**IV.    Conclusion**

For the reasons set forth above, the United States respectfully requests that the Court deny the Motion.


Dated:   Brooklyn, New York
         August 18, 2022

                                        Respectfully submitted,

                                        BREON PEACE
                                        United States Attorney

                                        By: */s/ Rebecca Schuman*
                                        Rebecca Schuman
                                        Assistant U.S. Attorney


cc:    Defendant Anthony Donato (via mail)
       Clerk of the Court (via ECF)